1  David E. Bower (SBN 119546)
2  **MONTEVERDE & ASSOCIATES PC**
   600 Corporate Pointe, Suite 1170
3  Culver City, CA 90230
   Tel: (213) 446-6652
4  Fax: (212) 202-7880

5  *Counsel for Plaintiff*

6

7                    **UNITED STATES DISTRICT COURT**

8          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

9

10  RACHEL SALPETER-LEVY, Individually          Civil Action No.     17-cv-5013
    and on Behalf of All Others Similarly
11  Situated,                                    **CLASS ACTION COMPLAINT**

12                     Plaintiff,                 **DEMAND FOR JURY TRIAL**

13            v.                                      1.  **VIOLATIONS OF THE
                                                         SECURITIES EXCHANGE ACT OF
14  SCICLONE PHARMACEUTICALS, INC.,                     1934**
    JON S. SAXE, FRIEDHELM BLOBEL,
15  NANCY T. CHANG, RICHARD J.
    HAWKINS, GREGG ANTHONY
16  LAPOINTE, and SIMON LI,

17                     Defendants.

18

19

20

21

22

23

24

25

26

27

28

1    Rachel Salpeter-Levy ("Plaintiff"), by her undersigned attorneys, alleges upon personal

2 knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the

3 investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

5    1.    This action is brought as a class action by Plaintiff on behalf of herself and the other

6 public holders of the common stock of SciClone Pharmaceuticals, Inc. ("SciClone" or the

7 "Company") against SciClone and the members of the Company's board of directors (collectively,

8 the "Board" or "Individual Defendants," and, together with SciClone, the "Defendants") for their

9 violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

10 Act"), 15 U.S.C. §§ 78n(a), 78t(a), U.S. Securities and Exchange Commission ("SEC") Rule 14a-

11 9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed

12 merger (the "Proposed Merger") between SciClone and a consortium consisting of entities

13 affiliated with GL Capital Management GP Limited ("GL Capital"), Bank of China Group

14 Investment Limited ("BOCGI"), CDH Investments, Ascendent Capital Partners, and Boying

15 (collectively, the "Buyer Consortium").

16    2.    On June 7, 2017, SciClone, entered into a definitive agreement and plan of merger

17 (the "Merger Agreement") with the Buyer Consortium, pursuant to which each SciClone stock

18 holder stands to receive $11.18 for each share of SciClone common stock they own (the "Merger

19 Consideration").

20    3.    On August 18, 2017, in order to convince SciClone stockholders to vote in favor of

21 the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading

22 Definitive Proxy Statement (the "Proxy") with the SEC.

23    4.    While Defendants are touting the fairness of the Merger Consideration to the

24 Company's stockholders in the Proxy, they have failed to disclose material information that is

25 necessary for stockholders to properly assess the fairness of the Proposed Merger, thereby

26 rendering certain statements in the Proxy incomplete and misleading.

27

28

2

CLASS ACTION COMPLAINT

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for the Company; (ii) the valuation analyses performed by the Company's financial advisor, J Lazard Frères & Co. LLC ("Lazard"), in support of its fairness opinion; and (iii) the continued employment of SciClone officers and directors in the surviving company.

6.      The special meeting of SciClone stockholders to vote on the Proposed Merger is scheduled for September 27, 2017. It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the stockholder vote, so that they can properly exercise their corporate suffrage rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Regulation G, 17 C.F.R. § 244.100. Plaintiff seeks to enjoin Defendants from holding the stockholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless and until the material information discussed below is disclosed to SciClone stockholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an

CLASS ACTION COMPLAINT

1  effect in this District; (ii) SciClone maintains its primary place of business in this District; (iii) a

2  substantial portion of the transactions and wrongs complained of herein, including Defendants'

3  primary participation in the wrongful acts detailed herein, occurred in this District; and (iv)

4  Defendants have received substantial compensation in this District by doing business here and

5  engaging in numerous activities that had an effect in this District.

6                                    **PARTIES**

7        11.    Plaintiff is, and at all relevant times has been, a stockholder of SciClone.

8        12.    Defendant SciClone is a Delaware corporation and maintains its headquarters at

9  950 Tower Lane, Suite 900, Foster City, California 94404. SciClone's common stock trades on

10 the NASDAQ under the ticker symbol "SCLN".

11       13.    Individual Defendant Jon S. Saxe is a director of SciClone and is the Chairman of

12 the Board.

13       14.    Individual Defendant Friedhelm Blobel is a director of SciClone and is the

14 President and Chief Executive Officer of the Company.

15       15.    Individual Defendant Nancy T. Chang is, and has been at all relevant times, a

16 director of the Company.

17       16.    Individual Defendant Richard J. Hawkins is, and has been at all relevant times, a

18 director of the Company.

19       17.    Individual Defendant Gregg Anthony Lapointe is, and has been at all relevant

20 times, a director of the Company.

21       18.    Individual Defendant Simon Li is, and has been at all relevant times, a director of

22 the Company.

23                            **CLASS ACTION ALLEGATIONS**

24       19.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of herself

25 and the other public stockholders of SciClone (the "Class").  Excluded from the Class are

26 Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated

27 with any Defendant.

28

CLASS ACTION COMPLAINT

20.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. As of August 11, 2017, there were 52,191,854 shares of SciClone common stock outstanding, held by hundreds to thousands of individuals and entities scattered throughout the country. The actual number of public stockholders of SciClone will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy, in violation of Sections 14(a) of the Exchange Act;

ii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

iii)     whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares based on the materially incomplete and misleading Proxy.

c.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

CLASS ACTION COMPLAINT

1      f.      Defendants have acted on grounds generally applicable to the Class with

2   respect to the matters complained of herein, thereby making appropriate the relief sought

3   herein with respect to the Class as a whole; and

4      g.      A class action is superior to other available methods for fairly and

5   efficiently adjudicating the controversy.

6   **SUBSTANTIVE ALLEGATIONS**

7   **I.      The Buyer Consortium's Merger Consideration is Inadequate.**

8      21.      SciClone is a pharmaceutical company. The Company's product portfolio of

9   therapies includes oncology, infectious diseases, and cardiovascular disorders. The Company's

10  business is focused primarily in the People's Republic of China. The Company operates in two

11  segments: China and the Rest of the World, including its operations in the United States and Hong

12  Kong. The Company's lead product ZADAXIN (thymalfasin), approved in over 30 countries, is

13  used for the treatment of hepatitis B virus (HBV), hepatitis C virus (HCV), and certain cancers

14  according to the local regulatory approvals, and for use as an immune system enhancer. In addition

15  to ZADAXIN, SciClone markets seven partnered and in-licensed products in China. The Company

16  sells ZADAXIN in various international markets through its subsidiary, SciClone Pharmaceuticals

17  International Ltd. (SPIL). Its development portfolio includes Angiomax, Loramyc, Neucardin,

18  VIBATIV, and Cleviprex.

19     22.      The Merger Consideration is inadequate compensation for SciClone stockholders.

20  Indeed, the $11.18 Merger Consideration represents a 25% *discount* to SciClone's 52-week high

21  trading price of $15.03. Further, Lazard valued the Company at higher price than the Merger

22  Consideration in nearly every one of its various valuation analyses. Lazard calculated an implied

23  present value per share of up to $18.24, a 63% premium to the Merger Consideration.

24     23.      Moreover, since the Proposed Merger was announced, financial analysts have

25  downgraded the Company in response to the low Merger Consideration. The $11.18 Merger

26  Consideration came in well below SciClone's $14 price target. It is important to note that price

27

28

6
CLASS ACTION COMPLAINT

1  targets are a predictive valuation of what a stock is worth on its own.[1] They do not account for

2  premiums associated with a merger or takeover. A "take-out price", or the price that analysts

3  predict in the event a merger or takeover, would include those premiums and be significantly

4  higher.

5       24.    Finally, during the course of the sales process, the Board received multiple offers

6  for significantly higher value than the Merger Consideration. However, it appears that these offers

7  were abandoned in favor of the Buyer Consortium's inferior offer due to the preexisting

8  relationship with GL Captial, the second largest stockholder of SciClone, and in exchange for

9  favorable negotiations of continuing officer and director employment.

10      25.    In sum, the Merger Consideration inadequately compensates SciClone stockholders

11  for their shares.  Given the market reaction, it appears that $11.18 per share is not fair compensation

12  for SciClone stockholders. It is therefore imperative that the Company's stockholders receive the

13  material information (discussed in detail below) that Defendants have omitted from the Proxy,

14  which is necessary for stockholders to properly exercise their corporate suffrage rights and make

15  an informed decision concerning whether to vote in favor of the Proposed Merger**.**

16  **II.     The Merger Agreement's Deal Protection Provisions Deter Superior Offers.**

17

18      26.    In addition to conducting an unreasonable sales process that resulted in the unfair

19  Merger Consideration, the Individual Defendants agreed to certain deal protection provisions in

20  the Merger Agreement that operate conjunctively to deter other suitors from submitting a superior

21  offer for SciClone.

22      27.    First, the Merger Agreement contains a no solicitation provision that prohibits the

23  Company or the Individual Defendants from taking any affirmative action to obtain a better deal

24  for SciClone stockholders. The Merger Agreement states that the Company and the Individual

25  Defendants shall not, directly or indirectly:

26

27

28  [1] See http://www.investopedia.com/terms/p/pricetarget.asp

CLASS ACTION COMPLAINT

(i) solicit or initiate, or knowingly encourage, induce or facilitate any alternative transaction proposal or any inquiry or proposal that constitutes or would reasonably be expected to result in an alternative transaction proposal, (ii) participate in any discussions or negotiations with any person regarding, or furnish to any person any non-public information with respect to, or cooperate in any way with any person (whether or not a person making an alternative transaction proposal) with respect to any alternative transaction proposal or any inquiry or proposal that would reasonably be expected to result in an alternative transaction proposal, (iii) approve or recommend any alternative transaction proposal, (iv) approve or recommend, or execute or enter into, any letter of intent, agreement in principle, memorandum of understanding, merger agreement, asset or share purchase or share exchange agreement, option agreement or other similar agreement related to any alternative transaction proposal, (v) enter into any agreement or agreement in principle requiring the Company to abandon, terminate or fail to consummate the transactions contemplated by the merger agreement or breach its obligations thereunder or (vi) propose, agree or publicly announce an intention to do any of the foregoing.

28.     Additionally, the Merger Agreement grants the Buyer Consortium recurring and unlimited matching rights, which provides the Buyer Consortium with: (i) unfettered access to confidential, non-public information about competing proposals from third parties which it can use to prepare a matching bid; and (ii) five business days to negotiate with SciClone, amend the terms of the Merger Agreement, and make a counter-offer in the event a superior offer is received.

29.     The non-solicitation and matching rights provisions essentially ensure that a superior bidder will not emerge, as any potential suitor will undoubtedly be deterred from expending the time, cost, and effort of making a superior proposal while knowing that the Buyer Consortium can easily foreclose a competing bid.  As a result, these provisions unreasonably favor the Buyer Consortium, to the detriment of SciClone's public stockholders.

30.     Moreover, the Merger Agreement provides that SciClone must pay the Buyer Consortium a termination fee of $15.8 million in the event the Company elects to terminate the Merger Agreement to pursue a superior proposal.  The termination fee provision further ensures that no competing offer will emerge, as any competing bidder would have to pay a naked premium for the right to provide SciClone stockholders with a superior offer.

CLASS ACTION COMPLAINT

31.    Compounding matters, GL Trade Investment Limited, who directly holds an aggregate of 4,750,116 shares of SciClone common stock (constituting approximately 9.2% of the outstanding shares), entered into a Voting and Support Agreement with the Company (the "Support Agreement"). This Support Agreement virtually assures that no superior offer will emerge. Assigning GL Trade Investment Limited to vote their shares in favor of the Proposed Merger makes it a near certainty that deal will close, and, therefore, is materially unfair to SciClone stockholders generally.

32.    Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company.

33.    Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that SciClone's stockholders receive all material information necessary for them to cast a fully informed vote at the stockholder meeting concerning the Proposed Merger.

**III.    The Proxy Is Materially Incomplete and Misleading.**

34.    On August 18, 2017, Defendants filed the Proxy with the SEC.  The Proxy has been disseminated to the Company's stockholders, and solicits the Company's stockholders to vote their shares in favor of the Proposed Merger. The Individual Defendants were obligated to carefully review the Proxy to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information, in violation of Sections 14(a) and 20(a) of the Exchange Act, that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Merger.

35.    First, the Proxy fails to provide material information concerning the Company's included financial projections. Specifically, the Proxy provides projections for non-GAAP (generally accepted accounting principles) metrics, including Free Cash Flows, but fails to provide

CLASS ACTION COMPLAINT

1    line item projections for the metrics used to calculate these non-GAAP measures or otherwise

2    reconcile the non-GAAP projections to the most comparable GAAP measures.

3         36.     When a company discloses non-GAAP financial measures in a Proxy, the Company

4    must also disclose all projections and information necessary to make the non-GAAP measures not

5    misleading, and must provide a reconciliation (by schedule or other clearly understandable

6    method), of the differences between the non-GAAP financial measure disclosed or released with

7    the most comparable financial measure or measures calculated and presented in accordance with

8    GAAP.  17 C.F.R. § 244.100.

9         37.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP

10   financial measures in communications with stockholders.  The former SEC Chairwoman, Mary Jo

11   White, recently stated that the frequent use by publicly traded companies of unique company-

12   specific non-GAAP financial measures (as SciClone has included in the Proxy here), implicates

13   the centerpiece of the SEC's disclosures regime:

14
15   > In too many cases, the non-GAAP information, which is meant to
16   > supplement the GAAP information, has become the key message to
17   > investors, crowding out and effectively supplanting the GAAP
18   > presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst,
19   > our Chief Accountant in the Division of Corporation Finance and I,
20   > along with other members of the staff, have spoken out frequently
21   > about our concerns to raise the awareness of boards, management
22   > and investors.  And last month, the staff issued guidance addressing
23   > a number of troublesome practices *which can make non-GAAP
24   > disclosures misleading*: the lack of equal or greater prominence for
GAAP measures; exclusion of normal, recurring cash operating
expenses; individually tailored non-GAAP revenues; lack of
consistency; cherry-picking; and the use of cash per share data.  I
strongly urge companies to carefully consider this guidance and
revisit their approach to non-GAAP disclosures.  I also urge again,
as I did last December, that appropriate controls be considered and
that audit committees carefully oversee their company's use of non-
GAAP measures and disclosures.[2]

25
26   [2]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual
Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-
GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-
27   speech.html.

28

CLASS ACTION COMPLAINT

1
2
3

38.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[3]

4
5

Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial

6
7

measures that demonstrate the SEC's tightening policy.[4] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to

8

provide any reconciling metrics that are available without unreasonable efforts.

9

39.     In order to make the projections included on page 62 of the Proxy materially

10

complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP

11

measures to the most comparable GAAP measures.

12

40.     At the very least, the Company must disclose the line item projections for the

13

financial metrics that were used to calculate the non-GAAP measures, including the various

14

formations of Free Cash Flows.  Such projections are necessary to make the non-GAAP projections

15

included in the Proxy not misleading.

16

41.     SciClone regularly reconciles non-GAAP financial metrics to GAAP net income in

17

statements to investors, including their quarterly and annual earnings press releases. In fact, the

18

Company performed line item GAAP reconciliations for non-GAAP EBITDA to GAAP net

19

income in the Proxy:

| EBITDA (Non-GAAP) | $52.9 | $40.00 | $44.3 | $52.1 | $40.8 | $46.3 | $49.1 | $40.1 |

20
21
22

---

23
24
25

[3]     *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

26
27
28

[4]     *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

CLASS ACTION COMPLAINT

1    42.    With respect to Lazard's *Sum-of-the-Parts Discounted Cash Flow Analysis*, the

2   Proxy fails to disclose the following key components used in the analysis: (i) the inputs and

3   assumptions underlying the calculation of the discount rate range of 9.5% to 11.5%; (ii) the inputs

4   and assumptions underlying the selection of the Zadaxin terminal growth rate range of -1.0% to

5   1.0%; (iii) the inputs and assumptions underlying the 15.0% growth rate applied to management's

6   projections to render the Angiomax and Vibativ cash flows used in the analysis; (iv) the inputs and

7   assumptions underlying the selection of the Angiomax and Vibativ terminal growth rate range of

8   2.0% to 6.0%; (v) the inputs and assumptions underlying the 15.0% growth rate applied to

9   management's projections to render the unallocated G&A cash flows used in the analysis; (vi) the

10   inputs and assumptions underlying the selection of the unallocated G&A terminal growth rate

11   range of 2.0% to 6.0%; and (vii) the actual terminal values calculated and utilized for each

12   component of the analysis.

13    43.    These key inputs are material to SciClone stockholders, and their omission renders

14   the summary of Lazard's Analysis incomplete and misleading.  As a highly-respected professor

15   explained in one of the most thorough law review articles regarding the fundamental flaws with

16   the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow

17   analysis a banker takes management's forecasts, and then makes several key choices "each of

18   which can significantly affect the final valuation."  Steven M. Davidoff, *Fairness Opinions*, 55

19   Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the

20   terminal value…" *Id.*  As Professor Davidoff explains:

21            There is substantial leeway to determine each of these, and any
              change can markedly affect the discounted cash flow value. For
22           example, a change in the discount rate by one percent on a stream of
             cash flows in the billions of dollars can change the discounted cash
23           flow value by tens if not hundreds of millions of dollars….This issue
             arises not only with a discounted cash flow analysis, but with each
24           of the other valuation techniques. This dazzling variability makes it
             difficult to rely, compare, or analyze the valuations underlying a
25           fairness opinion <u>unless full disclosure is made of the various inputs</u>
             <u>in the valuation process, the weight assigned for each, and the</u>
26           <u>rationale underlying these choices.</u> The substantial discretion and
             lack of guidelines and standards also makes the process vulnerable
27
28

CLASS ACTION COMPLAINT

to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78.

44.     With respect to Lazard's *Premia Paid Analysis*, the Proxy fails to disclose the individual premiums used to prepare the comparative analysis. A fair summary of this analysis requires the disclosure of the individual premiums for each transaction observed. Merely providing a range is insufficient, as stockholders are unable to assess whether the banker summarized fairly, or, instead, emphasize only the figures that best present the premia in light of the Merger Consideration, i.e. as low as possible. The omission of this information renders the summary of this analysis set forth on page 59 of the Proxy materially incomplete and misleading.

45.     Finally, the Proxy is contradictory and materially misleading concerning the employment of officers and directors by the surviving company. On page 42 the Proxy states: "no employment agreements or similar arrangements were or have been implemented in connection with discussions with the Buyer Consortium." However, on page 68 the Proxy states: "the officers of the Company immediately prior to the effective time will continue their employment as the officers of the surviving corporation."

46.     Although the Proxy states that all employment discussions occurred "after the negotiation and execution of the merger agreement," the Proxy states on page 43 that during the during the "go-shop" period "representatives of GL Capital, Friedhelm Blobel, and Hong Zhao met in Beijing and discussed retention for certain key employees." Given that during the "go-shop" period a superior proposal was submitted to the Board and abandoned in favor of the inferior offer submitted by the Buyer Consortium, the details of these discussions are extremely important and valuable to stockholders. The failure to include further details surrounding these discussions and the contradicting language surrounding continuing employment of officers renders the Proxy materially incomplete and misleading.

47.     Communications regarding continuing employment during the sales process must be fully and clearly disclosed. This information is vital to SciClone's stockholders so that they

CLASS ACTION COMPLAINT

1  may understand potential conflicts of interest facing management and the Board. The information

2  provides key insight concerning motivations that would prevent fiduciaries from acting solely in

3  the best interests of the Company's stockholders.

4          48.     In sum, the omission of the above-referenced information renders statements in the

5  Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent

6  disclosure of the foregoing material information prior to the special stockholder meeting to vote

7  on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a

8  fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are

9  thus threatened with irreparable harm, warranting the injunctive relief sought herein.

10                                            **COUNT I**

11  **(Against all Defendants for Violations of Section 14(a) of the Exchange Act, Regulation G,**

12              **17 C.F.R. § 244.100, and Rule 14a-9, 17 C.F.R. 240.14a-9)**

13

14          49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

15  herein.

16          50.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use

17  of the mails or by any means or instrumentality of interstate commerce or of any facility of a

18  national securities exchange or otherwise, in contravention of such rules and regulations as the

19  Commission may prescribe as necessary or appropriate in the public interest or for the protection

20  of investors, to solicit or to permit the use of his name to solicit any proxy or consent or

21  authorization in respect of any security (other than an exempted security) registered pursuant to

22  section 78l of this title."  15 U.S.C. § 78n(a)(1).

23          51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange

24  Act, provides that Proxy communications with stockholders shall not contain "any statement

25  which, at the time and in the light of the circumstances under which it is made, is false or

26  misleading with respect to any material fact, or which omits to state any material fact necessary in

27  order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

28

CLASS ACTION COMPLAINT

1    52.    SEC Regulation G has two requirements: (1) a general disclosure requirement; and

2  (2) a reconciliation requirement.  The general disclosure requirement prohibits "mak[ing] public a

3  non-GAAP financial measure that, taken together with the information accompanying that

4  measure, contains an untrue statement of a material fact or omits to state a material fact necessary

5  in order to make the presentation of the non-GAAP financial measure…not misleading."  17

6  C.F.R. § 244.100(b).  The reconciliation requirement requires an issuer that chooses to disclose a

7  non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure,

8  and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP

9  measure to the "most directly comparable" GAAP measure.  17 C.F.R. § 244.100(a).  As set forth

10  above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100.

11    53.    The omission of information from a proxy statement will violate Section 14(a) and

12  Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

13    54.    Defendants have issued the Proxy with the intention of soliciting stockholder

14  support for the Proposed Merger.  Each of the Defendants reviewed and authorized the

15  dissemination of the Proxy, which fails to provide critical information regarding, amongst other

16  things: (i) financial projections for the Company; (ii) the valuation analyses performed by Lazard

17  in support of its fairness opinion; and (iii) the continued employment of SciClone officers and

18  directors in the surviving company.

19    55.    In so doing, Defendants made untrue statements of fact and/or omitted material

20  facts necessary to make the statements made not misleading. Each of the Individual Defendants,

21  by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

22  to disclose such information, in violation of Section 14(a). The Individual Defendants were

23  therefore negligent, as they had reasonable grounds to believe material facts existed that were

24  misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information

25  to stockholders although they could have done so without extraordinary effort.

26    56.    The Individual Defendants knew or were negligent in not knowing that the Proxy

27  is materially misleading and omits material facts that are necessary to render it not misleading.

28

CLASS ACTION COMPLAINT

The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger; indeed, the Proxy states that Lazard reviewed and discussed its financial analyses with the Board, and further states that the Board considered both the financial analyses provided by Lazard as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company.

57.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review Lazard's analyses in connection with their receipt of the fairness opinion, question Lazard as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

58.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

59.    SciClone is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

60.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

CLASS ACTION COMPLAINT

61.    Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

62.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

63.    The Individual Defendants acted as controlling persons of SciClone within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of SciClone, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

64.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing this document.

CLASS ACTION COMPLAINT

66.    In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

67.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

68.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

69.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A.    Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

B.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C.    Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff and the Class rescissory damages;

18

CLASS ACTION COMPLAINT

D.  Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

E.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F.  Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED:  August 29, 2017

Respectfully submitted,

*/s/ David E. Bower*
    David E. Bower

David E. Bower SBN 119546
**MONTEVERDE & ASSOCIATES PC**

600 Corporate Pointe, Suite 1170
Culver City, CA 90230
Tel: (310) 446-6652
Fax: (212) 202-7880
Email:  dbower@monteverdelaw.com

*Counsel for Plaintiff*

**OF COUNSEL**

**MONTEVERDE & ASSOCIATES PC**
Juan E. Monteverde
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, New York 10118
Tel:  212-971-1341
Fax:  212-202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*

CLASS ACTION COMPLAINT